**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:19-CV-00177-KDB-DCK**

|  |  |
|---|---|
| **GLOBAL HOOKAH DISTRIBUTORS, INC.,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **AVIOR, INC.,** | |
| **Defendant.** | |

     **THIS MATTER** is before the Court on Plaintiff Global Hookah Distributor, Inc.'s ("Global Hookah") Motion for Leave to File First Amended Complaint (Doc. No. 20), Motion for Sanctions Pursuant to Rule 37(e) (Doc. No. 21), Motion for Reconsideration (Doc. No. 41) and Motion to Amend/Correct Scheduling Order (Doc. No. 57) and Defendant Avior, Inc.'s Motion for Summary Judgment (Doc. No. 24) and Motion to Strike Affidavit in Opposition to Motion (Doc. No. 48). The Court has carefully considered these motions and the parties' extensive briefs and exhibits in support of and in opposition to the various motions. For the reasons discussed below, the Court will **DENY** Plaintiff's motions to file an Amended Complaint and for reconsideration and motion for sanctions. With respect to Defendant's motions, the Court will **DENY** the motion for summary judgment, allowing Plaintiff's remaining claim for breach of contract to proceed, but will partially **GRANT** the motion as to plaintiff's claim for conversion (which is subsumed within the breach of contract claim) and certain alleged damages. The Court

1

will also **DENY** Defendant's motion to strike. A separate revised scheduling order will be entered generally in accordance with the parties' agreement.

In brief summary, the Court finds that Plaintiff's request to revive its claims for fraudulent inducement and unfair trade practices is properly considered as a motion for reconsideration and after due reconsideration finds that there is no substantial new evidence, error of law or other grounds which require reinstatement of those claims. Most simply put, this is fundamentally a contract dispute among a service provider and a customer, nothing more but nothing less. With respect to the motion for summary judgment, there are clearly disputed issues of fact concerning the parties' agreements and performance that preclude summary judgment on whether Avior is liable to Global Hookah on its claim for breach of contract.

However, some of Global Hookah's alleged "special damages," specifically including its alleged lost profits and lost business opportunities, exceed the bounds of permissible damages based on the evidence of record. While Plaintiff may recover all damages directly attributable to Defendant's alleged breach of contract, including reasonable compensation for preparing tax returns which Defendant allegedly promised to prepare and damages associated with Defendant's alleged failure to properly perform its services, it is not entitled to recover for alleged lost profits or business opportunities that were not within the contemplation of the parties with respect to their contract nor sufficiently causally connected to the alleged breach. Finally, the Court finds insufficient cause to exercise its discretion to sanction the Defendant under Rule 37(e) for spoliation of evidence or to grant the motion to strike portions of affidavits offered in opposition to Defendant's Motion for Summary Judgment.

# I. LEGAL STANDARD

Unless certified as final, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The power to reconsider or modify interlocutory rulings is committed to the discretion of the district court. *See Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462, 1473 (4th Cir.1991).

Nevertheless, the Federal Rules of Civil Procedure do not specifically contain a "motion for reconsideration." Such motions, however, are allowed in certain, limited circumstances. It is improper to file a motion for reconsideration simply to "ask the Court to rethink what the Court had already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc*., 99 F.R.D. 99, 101 (E.D. Va.1983). The purpose of a motion to reconsider is primarily to present the Court with newly discovered evidence or to correct manifest errors of law in a prior order. *DirecTV, Inc. v. Hart,* 366 F. Supp. 2d 315, 317 (E.D.N.C. 2004) (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3rd Cir. 1985)). "Such problems rarely arise and the motion to reconsider should be equally rare." *Wiseman v. First Citizens Bank & Tr. Co*., 215 F.R.D. 507, 509 (W.D.N.C. 2003) (quoting *Above the Belt, Inc.,* 99 F.R.D. at 101). The limited use of a motion to reconsider serves to ensure that parties are thorough and accurate in their original pleadings and arguments presented to the Court. To routinely allow motions to reconsider would result in unending motions practice. *Id*.; *see Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001).

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to file an amended complaint be "freely given when justice so requires." Fed. R. Civ. P. 15. Consistent with that lenient standard, the Supreme Court has held that "[i]f the circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded the opportunity to test his claim on the merits." *See Foman v. Davis,* 371 U.S. 178, 182 (1962). However, the opportunity to amend a complaint is not unbounded. Leave to amend a pleading should be denied "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006) (*quoting Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986), *Foman v. Davis,* 371 U.S. 178, 182 (1962)). Further, amendment of a pleading should not be permitted if it is only to revive a previously dismissed claim in the absence of good cause to reconsider the court's prior decision as discussed above. *See Lee v. Norfolk Southern Railway Co.,* 1:13-cv- 4, 2016 WL 8315736 (W.D.N.C. May 11, 2016) ("Plaintiff's attempt to resurrect a previously dismissed claim by motion to amend the pleadings is an invalid basis for seeking leave." (citing *Hester v. Int'l Union of Operating Engineers*, 941 F.2d 1574, 1578-79 (11th Cir. 1991))).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

4

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the

5

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.     FACTUAL CONTENTIONS AND PROCEDURAL HISTORY

### A.     Factual Contentions

#### 1.     The Beginning of the Parties' Relationship

Global Hookah sells tobacco and related products across the country. (Doc. No. 25-2 (Deposition of Brennan Appel) at 23). From 2007 until 2011, the company's owner, Brennan Appel ("Appel"), prepared and filed Global Hookah's tobacco-related taxes himself in the various states where Global Hookah was licensed. (Doc. No. 25-2 at 27). In 2011, Mr. Appel sought to outsource the tax preparations because it was so time consuming. (Doc. No. 25-2 at 29).

In 2011, Avior was a tax software provider that offered electronic tax preparation services to companies that sold tobacco. (Doc. 25-3 (Deposition of Jamal Elsaadi) at 77). At that time, no other company offered the tobacco-related tax services offered by Avior. (Doc. 25-2 at 36). Specifically, Avior's software allowed a tobacco seller to upload its monthly electronic tobacco-related sales data into an online "account" and receive auto-generated tax reports that complied with each state's specific filing requirements (Doc. 25-2 at 26–27; 32). The seller then had the

6

option to file its Avior-prepared reports with the appropriate taxing authority and pay the taxes itself or, at an additional cost, the seller paid Avior to file the tax reports and arrange for payment to the appropriate authority.

In the Fall 2011, Global Hookah and Avior began to work together, (Doc. 26 at ¶5), although the parties disagree on the timing of the beginning of their relationship and their first related tax filings and associated payments. However, there is no dispute that from 2011 until the summer of 2017, the parties' business relationship involved a monthly invoice and payment, the uploading of Global Hookah's sales data into an Avior account and Avior's preparation of Global Hookah's tobacco tax returns in the various states, which Avior sent to Global Hookah for it to file itself.[1]

### 2. The Parties 2017 Agreement

By 2017, Avior was preparing nearly all of Global Hookah's monthly tax reports for the states where Global Hookah was licensed to sell tobacco. (Doc. No. 25-2 at 31). On July 21, 2017, Mr. Appel emailed Avior and asked whether Avior could handle preparing, filing and remitting payment for all monthly taxes in all twenty-three states where Global Hookah did business. Avior stated that it could handle those services under its "Pro" plan, in which Avior undertook responsibility for both preparing and filing the tax returns and obtaining licenses. In addition to preparing and filing all electronic and paper tobacco tax reports and licenses, the "Pro" level of services included assistance handling payment of each state's taxes. (Doc. No. 25-2 at 118– 19; Doc. No. 25-3 at 173). Under the "Pro" plan, Avior would use Global Hookah's login and

---

[1] By July 2017, Avior had also started filing Global Hookah's tax reports in states that allowed electronic filing, but Global Hookah still filed its paper returns. (Doc. No. 25-2 at 31).

password information to make electronic filings on its behalf on the taxing authorities' websites or print and mail paper filings to the appropriate address. (Doc. No. 25-3 at 61–62). For Avior to make the actual payments with its electronic filings, Global Hookah provided Avior its bank account information, (Doc. No. 25-2 at 97), and Avior "would debit [Global Hookah's] account for the transactions and remit that [ ] over to the states. Or the states would debit [Global Hookah's] account directly…." (*Id*.).

Beyond an exchange of emails generally reflecting an agreement to use and provide Avior's upgraded "Pro" services beginning in August 1, 2017, the parties' allegedly did not agree in writing on all of the specific terms of their 2017 agreement (hereinafter, the "Contract"). Global Hookah contends that some of the relevant terms of the Contract were contained in Avior's website to which Avior's owner referred Appel during their discussions (this website language has allegedly not been fully preserved and is the subject of Global Hookah's motion for sanctions discussed below). Also, other terms were allegedly either discussed orally or not discussed in detail at all, with the parties offering differing views of historical practices which they contend should be applied to the Contract.

Most significantly, the parties dispute which months were agreed to be included in the annual, pre-paid price of $10,988.87 for twelve months of "Pro" services. Global Hookah contends that it had already paid Avior to prepare the tax returns for sales made in July 2017 (which was then used as a "test run" for the "Pro" plan filing) so the August 1, 2018 invoice specifying that it applies to "Tax TOB Reports" for the period "08/01/2017 – 07/31/2018" reflects an agreement to prepare taxes for Global Hookah's sales during those months. In turn, Avior contends that the first month of returns governed by the Contract was for the sales made in July 2017 (and that the

8

preparation of taxes for July 2017 sales was not a "test run") so that Avior had no obligation to prepare or file tax returns for sales made in July 2018 under the parties' twelve month agreement.

### 3. Performance of the Contract and its Termination

Both parties agree that there were problems and mistakes in Avior's performance of the Contract, although the Parties predictably disagree on the extent and import of those errors. Global Hookah contends that Avior made numerous untimely and inaccurate filings and failed to help Global Hookah maintain its licenses to sell tobacco products, leading to the withholding or loss of licenses in some states. Further, Global Hookah complains that in using accounts with state taxing authorities Avior changed Global Hookah's login credentials and replaced the contact email address with its own without notifying the company or providing the new login, which allegedly led to Global Hookah's inability to access its own state taxing authority websites even if it attempted to reset the password. Also, Avior withdrew funds from Global Hookah's bank account to cover the penalties from its untimely filings. The parties dispute whether Avior was authorized to do so, if the funds paid as a result of Avior's errors were required to be refunded and the circumstances under which Avior offered to refund or credit the interest and penalties (which totaled $295.33) back to Global Hookah.[2] In response, Avior acknowledges that it "made some errors" and "on occasion Avior missed the filing deadlines, generating late penalties and/or interest," but Avior points out that between August 2017 and May 2018 Avior prepared, filed and paid more than 200 draft and final monthly and/or quarterly tax returns for Global Hookah.

---

[2] Avior argues that the offer and alleged acceptance of a "credit" amounted to an "accord and satisfaction," which Global Hookah disputes in several respects.

9

Also, the parties' differing interpretations of Avior's obligation to prepare Global Hookah's taxes for its July 2018 sales led to significant problems in July 2018. On July 6, 2018, Avior sent Global Hookah an email stating that beginning August 1, 2018, there would be a new pricing structure for its services, raising its monthly fee more than four-fold from $495 to over $2,135. Avior requested that Global Hookah submit an ACH form by July 15, 2018 so that payment could be drawn from Global Hookah's account on August 1, 2018 if services were desired for August 2018. In subsequent communications, Global Hookah responded that it had already paid Avior to prepare the returns for the July 2018 sales so the "new" tax returns would not need to be prepared until September. Avior in turn demanded that Global Hookah provide the ACH form agreeing to the increased price if Global Hookah wanted service in August 2018.

Unable to quickly arrange substitute services, Global Hookah emailed the ACH form to Avior on July 24, 2018, specifically instructing Avior that the payment "should occur around the end of August 2018." On the ACH form, Mr. Appel also purported to apply the $295.33 "refund/credit" the parties had previously discussed. In response to the email, Avior declined the form, saying that Global Hookah sent in the form too late in order for Avior to process it in time for preparing the July 2018 taxes. Then, on the same day, Avior told Global Hookah that "[w]e advise you to find another company to handle your July tax returns." In response, Global Hookah demanded that Avior prepare the July tax reports under the Contract, repay the $295.33 worth of interest/penalties and enter into a new arrangement. Alternatively, Global Hookah demanded Avior pay substantial damages for harm allegedly caused by Avior's alleged breach of the Contract. Avior did not respond to Mr. Appel's email. Instead, Global Hookah alleges that Avior

covertly terminated Global Hookah's access to its Avior account and refused to provide Global Hookah with its changed login credentials for state taxing authority accounts.

When Avior refused to prepare and file Global Hookah's July 2018 taxes, Mr. Appel timely prepared, filed and paid the taxes himself. As discussed in more detail below, Global Hookah seeks damages related to Avior's alleged breach of the Contract and the resulting necessity of Global Hookah (in particular Mr. Appel) being required to do the work instead. These damages include compensation for Mr. Appel's time to prepare and file the returns, lost profits and business opportunities related to the alleged diversion of Mr. Appel's time and resources to prepare the returns and costs associated with engaging a new firm to prepare and file the returns in the future.

### B. Procedural History

On January 9, 2019, Global Hookah filed its complaint against Avior in the General Court of Justice, Superior Court Division of Mecklenburg County, asserting four claims: breach of contract, fraud in the inducement, conversion and unfair and deceptive trade practices ("UDTP"). Avior removed the matter to this Court and thereafter filed a motion to dismiss the fraud and UDTP claims pursuant to F.R.C.P. 12(b)(6). (Doc. No. 1-2).

On July 25, 2019, this Court granted Avior's motion. (Doc. No. 9) (the "Dismissal Order"). Following the Dismissal Order, Avior filed its Answer on August 8, 2019. On September 11, 2019, the Court entered its Scheduling Order, requiring all discovery to be completed by January 28, 2020 and dispositive motions to be filed by May 22, 2020. (Doc. No. 14, §I(F), II(A)). The Scheduling Order set this matter for trial for September 14, 2020. (*Id.*, Section III).

On May 15, 2020, one week before the parties' motions for summary judgment were due, Global Hookah filed its Motion for Leave to File Amended Complaint, an action which Global

Hookah has described as an effort to "revive" its fraud and UDTP claims that this Court dismissed back in July 2019. (Doc. No. 20-1, at 1). On the following day, Global Hookah filed a Motion for Sanctions, seeking a negative inference as a result of Avior's failure to maintain the version of its website that existed between May and July 2017. (Doc. Nos. 21, 22). On May 22, 2020, Avior filed its motion for summary judgment. (Doc. No. 24).

On May 29, 2020, Avior filed its Response in Opposition to Global Hookah's Motion to Amend, arguing that Global Hookah should not be allowed to revive claims that the Court had dismissed with prejudice without moving to reconsider the Dismissal Order. In response, on June 6, 2020, Global Hookah filed its Motion for Reconsideration, while continuing to maintain that it had properly sought to amend its Complaint.

## III. DISCUSSION

### A. Motions for Reconsideration and for Leave to File First Amended Complaint

Global Hookah's original Complaint included counts of: (i) conversion, (ii) breach of contract, (iii) fraudulent inducement and (iv) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75.1-1 ("UDTPA"). Approximately a year ago, Global Hookah's fraudulent inducement and UDTPA claims were dismissed for failure to state a claim in the Dismissal Order. (Doc. No. 9). Global Hookah now seeks to "revive" those claims either though amendment of its Complaint or by the Court's reconsideration of the Dismissal Order. The Court finds that it is not entitled to do so on either ground.

12

First, as discussed above, a plaintiff may not avoid the effect of the dismissal on the merits of a claim[3] simply by refiling the same claim in an amended pleading without showing good cause which would be sufficient for the court to reconsider its ruling. *See Lee v. Norfolk Southern Railway Co.,* 1:13-cv- 4, 2016 WL 8315736 (W.D.N.C. May 11, 2016). If the rule were otherwise, then "there would be no conclusion to motions practice, each motion becoming nothing more than the latest installment in a potentially endless serial that would exhaust the resources of the parties and the court." *See Potter v. Potter*, 199 F.R.D. 550, 553 (D. Md. 2001). Parties are not entitled to "unlimited opportunities to seek the same relief" simply by conjuring up a new way to ask for it. *Id*. Accordingly, the proper avenue for Global Hookah to seek to revive its fraud and UDTPA claims is through its motion for reconsideration.

The parties do not dispute that the decision to grant or deny a motion to reconsider is within the sound discretion of the Court. After careful reconsideration, the Court will not exercise its discretion to reinstate either of Global Hookah's dismissed claims. Global Hookah claims that Avior repeatedly failed to timely and accurately generate Global Hookah's tax return forms, make payments, and file those returns and otherwise fulfill its obligations under the Contract. As discussed below, the Court will allow those claims to proceed. However, the Court finds no error of law in its earlier ruling nor has Global Hookah proffered sufficient new evidence to establish a

---

[3] The Court's dismissal of Plaintiff's claims in ruling on a 12(b)(6) motion constitutes a dismissal on the merits with prejudice. *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) ("Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice."); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.").

tort claim that is "identifiable" and "distinct from the primary breach of contract claim." *Broussard v. Meineke Disc. Muffler Shops, Inc*., 155 F.3d 331, 346 (4th Cir. 1998) (quoting *Strum v. Exxon Company, U.S.A.*, 15 F.3d 327, 330-31 (4th Cir. 1994)). "The mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Strum*, 15 F.3d at 331 (citing *Hoyle v. Bagby*, 117 S.E.2d 760, 762 (N.C. 1961)).

Further, as found in the Dismissal Order, Plaintiff's allegations of misrepresentations that led to its execution of the Contract are not actionable as fraud because they were promissory in nature at the time they were made and relate to future actions and conduct or are "puffery." *See* Dismissal Order at 6-7; *Forstmann v. Culp*, 648 F. Supp. 1379, 1386 (M.D.N.C. 1986) (citing *Pierce v. Am. Fidelity Fire Ins. Co*., 83 S.E.2d 493 (N.C. 1954)). Finally, there remains insufficient evidence to find that Avior did not intend to fulfill its obligations when the Contract was executed. Rather, much of the Contract was successfully completed, which, while certainly not enough for Avior to avoid potential contractual liability, is strong evidence of a lack of an initial fraudulent intention.

Similarly, Global Hookah's UDTPA claim has not been sufficiently improved by discovery nor was there any error of law related to that claim in the Dismissal Order. Specifically, Plaintiff has failed, in the context of its contractual relationship with Avior, to establish "'[e]gregious or aggravating circumstances' in addition to the underlying breach of contract." Dismissal Order at 12 (quoting *Nike USA Inc. v. WDP Soccer Inc*., No. 3:18-CV-374-RJC-DSC, 2018 WL 4289653, at *4 (W.D.N.C. Aug. 10, 2018), *report and recommendation adopted*, No. 3:18-CV-00374-RJC-DSC, 2018 WL 4283062 (W.D.N.C. Sept. 7, 2018). Indeed, "[a] mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA." *Id.*

14

**B. Motion for Summary Judgment**

    1. <u>Liability</u>

Avior moves for summary judgment on Global Hookah's remaining claims, arguing that despite the lengthy arguments between the parties over the facts the Court should conclude that the evidence favors Avior to such an extent that no reasonable jury could find in Plaintiff's favor. The Court disagrees. It is abundantly clear that genuine material factual disputes exist, at a minimum, over which time period / tax returns are covered by the Contract, including whether or not a "trial run" was made in preparing the June 2018 tax returns. In fact, there is no full written contract to enforce at summary judgment because Global Hookah contends that other contractual terms remain uncertain in light of the failure (of either party) to maintain a contemporaneous copy of Avior's website, which Avior allegedly referenced as part of its contractual representations.

Further, Global Hookah has raised legitimate questions about the credibility of Avior's principal witness, its President and sole owner, Mr. Elsaadi. According to Plaintiff, when Mr. Elsaadi conferred with Global Hookah during the June 27, 2018 call to discuss problems with the performance of the Contract, he refused to identify himself as the owner or manager when directly asked. Instead, Mr. Elsaadi repeatedly referred to "the management," and identified himself only as Global Hookah's "account rep[resentative]." Mr. Elsaadi also suggested that a "supervisor" was "[n]ot available" to make decisions and that if Global Hookah wanted something Mr. Elsaadi could "send it up." Later, in his deposition, Mr. Elsaadi admitted that he does not have a supervisor and raised other doubts concerning his honesty during his communications with Global Hookah. In sum, it is for the jury, not the Court at summary judgment, to decide the factual disputes between the parties, particularly when important credibility issues will need to be considered. *See*

15

*Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007) (holding that the court cannot weigh the evidence or make credibility determinations at summary judgment). Therefore, the Court will deny the Motion for Summary Judgment as to Avior's potential liability on Global Hookah's claim for breach of contract.

However, Avior is entitled to partial summary judgment on Global Hookah's claim for conversion, which is more properly considered part of its claim for breach of contract. "North Carolina's economic loss rule provides that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" *Dillon v. Leazer Grp., Inc.,* 374 F. Supp. 3d 547, 557 (E.D.N.C. 2019) (citations omitted). Tort claims are limited "to only those claims which are identifiable and distinct from the primary breach of contract claim." *Legacy Data Access, Inc. v. Cadrillion, LLC,* 889 F.3d 158, 164 (4th Cir. 2018).

With respect to its conversion claim, Global Hookah contends that Avior "converted" its funds by deducting money from its accounts to pay penalties and interest caused by Avior's failures to timely and/or properly file tax returns and then refusing to refund that money. Accordingly, the alleged "converted" funds are in fact more accurately described as part of Global Hookah's alleged damages arising from Avior's alleged breach of contract. Because Global Hookah's conversion claim "arises from the same facts and alleges the same injuries as the claim for breach of contract," the economic loss rule bars the tort claim. *Gregory Wood Products, Inc. v. Advanced Sawmill Mach. Equip., Inc.*, 2007 WL 1825179, at *10 (W.D.N.C. June 25, 2007). Therefore, the Court will grant Avior summary judgment on Global Hookah's conversion claim, although the substance of that claim remains part of its claim for breach of contract as discussed above.

16

2. <u>Damages</u>

As an alternative to its request that the Court grant summary judgment on Global Hookah's breach of contract claim, Avior seeks partial summary judgment on particular types of alleged damages related to that claim, which it contends are not recoverable as too speculative or unrelated to Avior's alleged breach. *See, e.g.*, *Earhart v. Countrywide Bank, FSB*, 3:08-CV-238, 2009 WL 500838, at *7 (W.D.N.C. Feb. 25, 2009) (eliminating lost profits claim at summary judgment); *Buff v. Diamond Pet Foods, Inc.*, 5:07-CV-20, 2009 WL 926945, at *2 (W.D.N.C. Mar. 30, 2009) ("preclud[ing] party from presenting any evidence at trial relating to damages for lost profits"). For the reasons discussed below, the Court will, in part, grant partial summary judgment on certain damages[4] alleged by Global Hookah.

The goal of contractual damages is to award compensation that puts "the injured party …, insofar as this can be done by money, in the same position he would have occupied if the contract had been performed." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 671, 464 S.E.2d 47, 62 (1995). "Direct" damages are those that naturally flow from the breach which "might accrue to any person similarly situated." *Id*. at 665, 464 S.E.2d at 59 (internal citations omitted). "Special" damages are those that arise by reason of the particular circumstances of the case. *Id*. at 671, 464 S.E.2d at 62 (citing *Penner v. Elliott*, 225 N.C. 33, 35, 33 S.E.2d 124,

---

[4] This ruling focuses on Avior's challenge to Global Hookah's claims for direct and special damages (primarily lost sales and profits). Avior also seeks partial summary judgment on Global Hookah's claim for rescission, which Global Hookah has not actively defended in its briefs. With respect to rescission, the Court agrees with Avior and finds that Global Hookah is not entitled to rescission of the Contract because it has an adequate legal remedy for damages which precludes a claim for rescission. *See Morris v. Scenera Research, LLC*, 368 N.C. 857, 867, 788 S.E.2d 154, 161 (2016).

17

126 (1945) (quoting Black's Law Dictionary 314–315 (2d ed.))). In short, the amount of money which will completely indemnify the injured party is the true measure of damages. *Id*. Nevertheless, "[i]n order to recover [either general and special damages] in a contract action, plaintiff must … show loss with a reasonable certainty, and damages may not be based upon mere speculation or conjecture." *Pike v. Wachovia Bank & Tr. Co.*, 274 N.C. 1, 17– 18, 161 S.E.2d 453, 466 (1968).

Global Hookah claims it suffered damages as a result of Avior's failures to fully and satisfactorily perform the Contract. These damages include reimbursement of interest and penalties for late filings and payments related to Avior's allegedly inadequate performance and, more substantially, compensation for Global Hookah having to itself prepare its July 2018 tax returns. Altogether, Global Hookah contends it spent 24 hours attempting to regain access to state taxing authority accounts, preparing and filing July tax returns, and applying for renewals. Doc. No. 38 (Appel Declaration) at ¶ 59. Also, Global Hookah seeks compensation related to its state licensure problems and other damages to its relationships with state taxing authorities allegedly caused by Avior's contractual breach.

The Court finds that, contrary to Avior's argument, the amount of these damages ought not be substantially foreclosed at summary judgment. So long as Global Hookah provides the jury a reasonable basis to compensate the company for its time, effort, expenses and damages directly related to Avior's performance failures and the necessity of doing work that Avior promised to do, but did not, then it is entitled to that amount of damages. Under these circumstances, in which Avior allegedly forced Global Hookah to lose licenses and scramble to itself provide substitute

18

services when Avior refused to prepare the July 2018 tax returns, Avior cannot properly complain that the damages related to that effort cannot be calculated with mathematical precision.

In turn, however, the Court will not permit the jury to simply speculate on the amount of damages. While Global Hookah must be given some leeway to prove the amount of the *reasonable* compensation it is entitled to recover for its damages and the time spent rectifying Avior's alleged breach, that award must bear some logical and fair relationship to its actual losses and/or the cost of obtaining the services from Avior or elsewhere (such as an accounting firm). Similarly, with respect to Global Hookah's demand for reimbursement related to its efforts to obtain the services of a new provider, IGEN, Global Hookah is entitled to recover damages related to the preparation (or the attempt to explore the possibility of preparation) of the tax returns arguably included within the Contract, but not future services beyond the twelve month obligation (in the absence of proof that a new further contractual obligation was agreed, which neither party appears to contend occurred).

In addition to compensation for "direct" damages related to Avior's alleged failure to satisfactorily perform the Contract and having to prepare the tax returns itself, Global Hookah seeks "special" damages related to the alleged loss of profits and specific lost business opportunities which it contends were the result of Avior's contractual breach. Global Hookah argues that had Avior prepared timely and error-free returns and fully performed the Contract, Global Hookah would not have had to divert time and resources away from business growth to attend to complex tax issues. Consequently, it seeks to recover for that alleged diversion and lost growth.

19

It is indisputably true as a matter of simple economics and logic that in most, if not all, purchases of business services, a company purchases the services because it believes that it is more efficient and beneficial to the overall enterprise to purchase the services rather than accomplish the tasks through its own employees. However, allowing a claim for lost or diminished profits alleged only generally to have been caused by not receiving the promised services (i.e. not obtaining the "efficiency" inherent in purchasing the services) would sweep much too broadly. Rather, a claim for special or consequential damages related to breach of a contract must be causally related to the breach (i.e. damages incurred as a *consequence* of the breach). *See Chris v. Epstein,* 113 N.C. App. 751, 756, 440 S.E.2d 581, 584 (1994).

For example, while even a contract for janitorial or landscaping services might be expected to have some potential effect on "profits" if the company chose to perform those services in response to a contractual failure with its own employees (including its President as was done in this case), the measure of damages is simply the reasonable *value* of providing the substitute services in the absence of a showing (which would presumably be rare) that the breach necessarily caused particular damage to the company's profits. Otherwise, a defendant service provider's risk of damages would effectively and unfairly be unlimited. Indeed, to recover special damages at trial, a plaintiff must demonstrate it has suffered damages such as may reasonably be supposed to have been within the contemplation of the parties when the contract was made. *Id.; Pleasant Valley*, 120 N.C. App. at 673, 464 S.E.2d at 63 (citing *Troitino v. Goodman*, 225 N.C. 406, 412, 35 S.E.2d 277, 281 (1945)).

As special damages Global Hookah seeks to recover approximately $80,000 in alleged lost profits as a result of Mr. Appel's time spent responding to Avior's breach of contract and lost

revenue from several alleged lost business opportunities totaling more than $700,000. However, Global Hookah has failed to establish either the requisite causation or that the damages were in the contemplation of the parties when the contract was made. With respect to the lost business opportunities with Azure Tobacco, 1 Wholesale, LLC and Crushed, none of those opportunities arose until the Summer of 2018, well after the parties entered into the Contract, and there is no evidence that Global Hookah discussed these specific opportunities with Avior in relation to the Contract to provide tax services. Thus, any alleged damages related to these opportunities are neither causally related to the Contract nor within the contemplation of the parties at any relevant time.[5]

In response to the lack of a specific connection between the Contract and these opportunities, Global Hookah argues that Avior was aware that its services were being purchased to free up management for other tasks, including pursuing new business. Again, such an argument is insufficient to hold Avior liable and, if accepted, would greatly expand the scope of potential damages in nearly every case alleging a breach of a services contract because such contracts routinely reflect an intention to more efficiently use the purchaser's time and resources. Accordingly, Global Hookah cannot recover contractual damages related to its alleged lost business opportunities and the Court will grant partial summary judgment to Avior on those claims.

Similarly, Global Hookah cannot avoid summary judgment on its claim for "lost profits" resulting from its alleged lost time and business disruption, which Mr. Appel explained meant an

---

[5] The Court need not reach Avior's alternate arguments that Global Hookah failed to prove these damages with reasonable certainty, although the Court notes its agreement that a plaintiff is only entitled to recover lost profits as distinguished from lost revenue (which does not take into account relevant expenses or foregone costs).

21

amount of "sales that weren't made or diverting time and resources away from what [he] should have been doing [for Global Hookah]." Doc. No. 25-2 at 270. As with the specific lost business opportunities, Global Hookah has failed to establish a particular causal connection between any "lost profits" and Avior's alleged breach nor has it presented evidence that the parties contemplated such potential damages, beyond the possibility that Avior might be liable for failure to satisfy its contractual obligations inherent in every contract. Thus, Avior is entitled to partial summary judgment on Global Hookah's generalized claim of "lost profits" damages.[6]

### C.     Motion for Sanctions

In its Motion for Sanctions, Global Hookah contends that Avior should be sanctioned under Rule 37(e) of the Federal Rules of Civil Procedure because it failed to preserve its website that existed between May and July 2017, when the parties entered into the Contract. In response, Avior asserts that, regardless of any alleged duty to preserve the website beginning in July 2018 when litigation between the parties was first threatened, it could not have preserved the website at that time because the website had already been changed in January 2018 and thus no longer existed as it did between May and July 2017.  For the reasons discussed briefly below the Court declines to exercise its discretion to impose sanctions under Rule 37(e) or otherwise.

Spoliation of evidence refers to "the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). The duty to preserve evidence

---

[6] Although Global Hookah is not entitled to "lost profits," it may, as discussed above, recover reasonable compensation for its time and expense incurred as a result of Avior's alleged breach of contract, including the time of its President, Mr. Appel.

arises "not only during litigation but also extends to that period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id*. at 591 (emphasis added) (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)); *see also Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12–13 (E.D. Va. Jan. 21, 2017).

A federal district court's power to sanction a party for spoliation of evidence derives from two sources: (1) the Federal Rules of Civil Procedure; and, (2) the court's "inherent power to control the judicial process and litigation." *Id*. at 590. A district court has broad discretion to choose the appropriate sanction for a party's spoliation, but should use that discretion "to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Id*. (quoting *West*, 167 F.3d at 779). Any sanction imposed should be "designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and[,] (3) restore 'the prejudiced party to the same position he [or she] would have been in absent the wrongful destruction of evidence by the opposing party.'" *West*, 167 F.3d at 779 (quoting *Kronisch*, 150 F.3d at 126).

Federal Rule of Civil Procedure 37(e) specifically governs the parties' duty to preserve electronically stored information ("ESI") and establishes a federal district court's power (and limits its discretion) to sanction a party for destroying or failing to preserve ESI. *See MB Realty Group, Inc. v. Gaston County Bd. of Educ.*, 317CV00427FDW-DCK, 2019 WL 2273732, at *2 (W.D.N.C. May 28, 2019). Rule 37(e) provides in full:

> (e) **Failure to Preserve Electronically Stored Information**. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or[,]

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or[,]

(C) dismiss the action or enter a default judgment.

The text of Rule 37(e) thus establishes a multi-step analysis that courts must apply to determine if sanctions (or curative measures) are appropriate. Under Rule 37(e), before a court may impose sanctions, four requirements must be met. Fed. R. Civ. P. 37(e). First, some "ESI" must have been "lost." *Id*. Second, that information (or evidence) must be of the sort that "should have been preserved in the anticipation or conduct of litigation." *Id*. Third, the evidence must have been lost "because a party failed to take reasonable steps to preserve it." *Id*. Finally, the court must find that the evidence "cannot be restored or replaced through additional discovery." *Id*. The movant has the burden of proving all elements of Rule 37(e). *MB Realty Group*, 2019 WL 2273732, at *2. Also, the general approach of courts in the Fourth Circuit has been to apply a "clear and convincing evidence standard" if the movant, as here, seeks the more extreme sanctions under Rule 37(e)(2). *See Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 105 (E.D. Va. 2018).

The Court finds that at least the second requirement of Rule 37(e) has not been established. "Generally, it is the filing of a lawsuit that triggers the duty to preserve evidence." *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013). However, the duty may be triggered at an earlier time if the "party reasonably should know that the evidence may be relevant to anticipated

24

litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). Global Hookah alleges that Avior's duty to preserve evidence in connection with their dispute arose no earlier than July 2018. Thus, if Avior "lost" the website as it existed from May to July 2017 prior to July 2018 then sanctions under Rule 37(e) are inappropriate. *See* 2015 Advisory Committee Notes (Rule 37(e) "does not apply when information is lost before a duty to preserve arises."); *see also Trainer v. Cont'l Carbonic Products, Inc.*, 16-CV-4335 (DSD/SER), 2018 WL 3014124, at *4 (D. Minn. June 15, 2018) ("Because there was no requirement to preserve the information, spoliation sanctions are not warranted."). There is no dispute that Avior changed its website months before July 2018. Therefore, notwithstanding Global Hookah's argument that the nature of Avior's business makes it reasonable to require Avior to maintain copies of its website in all its iterations, the Court cannot sanction Avior under Rule 37(e) because the ESI was "lost" prior to July 2018, when Avior's alleged obligation to preserve the ESI began.[7] Accordingly, the Court will deny Global Hookah's Motion for Sanctions.[8]

### D. Motion to Strike

In its Motion to Strike (Doc. No. 48), Avior asks the Court to strike certain portions of Mr. Appel's declaration (Doc. No. 38) and Mr. Abuhilal's declaration (Doc. No. 37-8) generally relating to Global Hookah's requests for damages related to lost profits and lost business

---

[7] The Court also notes that unlike the ESI at issue in many discovery disputes, this information was publicly available to Global Hookah during the relevant time period of May to July 2017 (and for a number of months thereafter). Thus, to the extent the company wanted to preserve the terms of its purchase of services from Avior that it allegedly relied on it had the ability to do so simply by printing a copy of the relevant portions of the website.

[8] However, this ruling does not foreclose either party from arguing to the jury what it believes was presented on the website or informing the jury that Avior changed the website in January 2018 such that it no longer is available in the form it existed from May to July 2017.

opportunities. In light of the Court's ruling that it will grant partial summary judgment in favor of Avior on those issues, it need not reach the merits of Avior's Motion to Strike, which will be denied as moot. Also, in its discretion, the Court declines to award Avior its attorneys' fees incurred in connection with the motion.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Leave to File First Amended Complaint (Doc. No. 20), Motion for Sanctions Pursuant to Rule 37(e) (Doc. No. 21) and Motion for Reconsideration (Doc. No. 41) are **DENIED;**

2. Defendant's Motion for Summary Judgment (Doc. No. 24) is **GRANTED** in part and **DENIED** in part as set forth above;

3. Defendant's Motion to Strike Affidavit in Opposition to Motion (Doc. No. 48) is **DENIED**; **and**

4. The case shall **proceed to trial on the merits on the remaining claim for breach of contract** in the absence of a voluntary resolution of the dispute among the parties in accordance with a separate revised case management order to be entered by the Court.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: July 29, 2020

Kenneth D. Bell
United States District Judge

26